A. G. FILE NO.



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

*Superseded By art 29-d
V.C.S*

Honorable J. F. Holubec
County Auditor
Lavaca County
Hallettsville, Texas

Dear Sir:

Opinion No. 0-7488
Re: Whether a certain school
district may qualify for
State aid under Senate
Bill 167 for both white
and colored schools

We have received your letter of recent date,
requesting an opinion of this department with reference to
the State Equalization Law, Acts 1945, 49th Legislature,
Regular Session, Senate Bill 167, from which we quote, in
part, as follows:

"We have a school district that con-
tains 13.6 square miles and a scholastic
enumeration of 8 white and 10 colored
children."

Considering the facts and several questions
submitted, we think the only questions that require answer and
to which we confine this opinion are as follows:

1. Can this district qualify for State aid
under provisions of Acts 1945, 49th Legislature, Regular Session,
Senate Bill 167?

2. Are the white and colored scholastics com-
bined in calculating eligibility of a school district for State
aid under Senate Bill 167?

In connection with your first question, Article I,
Sec. 1, Acts 1945, 49th Legislature, Regular Session, S. B. 167,

Hon. J. F. Holubec - Page 2

is the provision of the so-called school aid law which controls
and regulates State aid to school districts in Texas. It fixes
as the basis for the distribution of State aid to school dis-
tricts the scholastic population. Stated in another way,
whether a school district is eligible for aid under S. B. 167
depends upon whether under the facts concerning the district,
it falls within one of the several clauses provided in Article
I, Sec. 1, Senate Bill 167.

Under said Section 1 of Article I, school districts
which are eligible for State aid under Senate Bill 167, provided
they comply with other provisions of the Act, may be designated
for clarity, categorically as follows:

"State aid under the provisions of this
Act shall be distributed in such a way as to assist:

(a) "All school districts which have not
fever than 20 nor more than 1,250 original enumerated
scholastics within the grades classified to be taught
remaining in the district after transfers out,"

(b) "Consolidated and/or rural high school
districts which have an average of not more than
200 scholastics of each original district com-
posing the consolidated and/or rural high school
district unit;"

(c) "Provided that the maximum limitation
as to scholastic population for eligibility
herein shall not apply for any type of aid to
any school district which is nine miles or more
in length nor contains 48 square miles of
territory or more provided there is not located
in such district an incorporated city or town
having a population of more than 3600 inhabitants,
according to the last Federal Census;

(d) "Provided further that the maximum
limitation as to the scholastic population for
eligibility, herein set forth, shall not apply
to any school district which has 45% of its
area submerged."

(e) "Districts maintaining a school at
home and having less than an average of one

enumerated scholastic per square mile are
exempt from said minimum scholastic require-
ment and are eligible for aid for only one
teacher unless a geographical barrier ne-
cessitates the operation of two schools for
the same grade in said district. . . ."

(f) "If they can show budgetary need,
all other districts having less than said
minimum scholastic requirement shall be eli-
gible for only tuition and transportation aid
to the nearest accredited school on enumerated
scholastics whose grades are not taught in
said district."

Under the facts submitted, the school district
in question clearly is not eligible for State aid under clauses
listed herein as (a) to (d), inclusive. It is equally clear, in
the light of the facts submitted, that the said district would
be eligible for the tuition and transportation aid provided
under subdivision (f) herein, provided the district does not
maintain a school at home.

There remains to be considered whether the school
district in question is eligible for teacher aid under that part
of Article I, Sec. 1, S. B. 167 quoted and designated as clause
(e) in this opinion. Under the facts submitted, the school
district in question is 13.6 square miles in area, having 8
white scholastics and 10 colored scholastics. Thus, if it be
within the contemplation of Senate Bill 167, that the white
and colored scholastics be combined in calculating the scholas-
tic population of the district for the purpose of determining
the eligibility of the district for State aid, it follows that
the district in question would not fall within the provisions
of clause (e) as designated herein, and, therefore, would not
be eligible thereunder for state aid.

It is the considered opinion of this Department
that Article I, Sec. 1, Senate Bill 167, contemplates that in
the determination of "the scholastic population" of a district
for the purposes of said Act, the school district seeking
State aid hereunder shall use the "original enumerated scho-
lastics within the grade classified to be taught remaining in
the district after transfers out" as provided in Sec. 1 of Art.
I; that the Act does not contemplate the segregation of white

Hon. J. P. Holubec - Page 4

and colored scholastic enumeration to determine the scholastic population of the district.

Article 2902, V. A. C. S., provides that, "All children, without regard to color, over six years of age and under 18 years of age at the beginning of any scholastic year, shall be included in the scholastic census."

True, Article III, Sec. 1 of Senate Bill 167, dealing with Teacher-Pupil Quota under Salary Aid does require as a basis for that purpose the separation of white and colored, but it is obvious that this particular question requires a separate enumeration because under Texas segregation laws, teachers will be required for separate schools; furthermore, it is applicable to those districts only which under Section 1, Article I, of Senate Bill 167, can qualify for state aid.

The statutes relating to the schools in Texas have specifically followed the constitutional provision, Art. VIII, Sec. 7, Constitution of Texas, for the segregation of white and colored scholastics. In each case, however, where segregation was desired, a specific provision for segregation is clearly stated. We find no such segregation specifically made or such an intendment of segregation made by the Legislature in Section 1, Art. I, Senate Bill 167, which sets out the qualifications of those school districts which shall be eligible for needed State aid.

Under the facts submitted, the school district in question is 13.6 square miles in area. Construing Section 1, Art. I, Senate Bill 167, as we do, the said school district has 18 enumerated scholastics. This district, therefore, cannot qualify for State aid under that provision of Article I, Sec. 1, listed as clause (e) herein, because it does not have "less than an average of one enumerated scholastic per square mile."

In the light of the above statute and discussion, it is the opinion of this department that the answers to your

266

Hon. J. V. Holubec - Page 5

questions as restated herein should be, and are, answered both in the negative.

                              Yours very truly

                           ATTORNEY GENERAL OF TEXAS

                    By          Chester E. Ollison
                                    Assistant

CEO:bt

        APPROVED NOV 27, 1946

        FIRST ASSISTANT
        ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN